UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EVELYN PRIMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.  09-2317 (RJL) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(July 16, 2012) [#44]

Plaintiff, Evelyn Primas ("plaintiff"), brought this action against defendants

District of Columbia ("the District") and the Chief of the Metropolitan Police Department

Cathy Lanier ("Chief Lanier") (collectively, "defendants"), alleging discrimination based

on race, sex, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000(e) *et seq.*, the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the District of Columbia Human Rights Act

("DCHRA"), D.C. Code §§ 2-1401 *et seq.*  On September 12, 2011, defendants moved

for summary judgment on all remaining claims set forth in plaintiff's amended complaint.

For the following reasons, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

Plaintiff, an African-American woman over the age of forty, is a former

Metropolitan Police Official and former employee of the District.  Am. Compl. ¶ 4, ECF

No. 6.  She began working for the District's Metropolitan Police Department ("MPD") in September 1978 and rose through the ranks until she was ultimately promoted to Commander in the Court Liaison Division in 2004. *Id.* ¶¶ 7-9.

On September 13, 2007, Chief Lanier met with plaintiff and inquired how long she intended to work before retirement. *Id.* ¶ 11.  Plaintiff informed her that she intended to work another two years. *Id.*  At that time, Chief Lanier informed the plaintiff that her position was going to be downsized two levels to the rank of Captain. *Id.*  Plaintiff was advised by Chief Lanier that she could remain in her job and retain her duties, but would have to be demoted two levels to the Captain rank. *Id.*  On September 18, 2007, plaintiff met again with Chief Lanier to discuss the downsizing of her Court of Liaison position. *Id.* ¶ 12.  After this meeting, it was plaintiff's understanding that, if she chose not to take the demotion to Captain, her only other choices were retirement or termination. *Id.* Believing that "she could not afford to take a two-grade demotion, particularly when she was close to retirement," plaintiff chose to retire rather than continue employment with the District. *Id.* ¶¶ 12-13.

On September 23, 2007, Chief Lanier announced that Captain Marcus Westover, a younger, white male, had been promoted to Inspector, the rank in between Captain and Commander, and placed in plaintiff's position in charge of the Court Liaison Division. *Id.* ¶ 14.  On September 25, 2007, plaintiff wrote a letter to Chief Lanier informing her that plaintiff believed her actions were discriminatory and illegal. *Id.* ¶15.  Upon receiving plaintiff's letter, Chief Lanier informed plaintiff that, if she wished, she could

remain with the police department at the rank of Inspector in a different assignment.  *Id.*
¶ 16.

Plaintiff filed a timely complaint with the Equal Employment Opportunity
Commission and received a right-to-sue letter dated September 14, 2009.  *Id.* ¶18.
Plaintiff filed this suit on December 7, 2009.  *See* Compl., ECF No. 1.  On June 19, 2010,
this Court dismissed the plaintiff's official-capacity DCHRA claim against Chief Lanier,
as well as the plaintiff's DCHRA claims against the District.  *See* Mem. Op., June 19,
2010, ECF No. 18.  Defendants now move for summary judgment on all remaining
claims set forth in plaintiff's amended complaint.  For the following reasons, the motion
is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when, based on the record, there is no genuine
issue as to any material fact, and the moving party is entitled to judgment as a matter of
law.  *See* Fed. R. Civ. P. 56(a); *Hussain v. Principi,* 344 F. Supp. 2d 86, 94 (D.D.C.
2004).  Summary judgment is not available, however, when there are factual disputes that
may determine the outcome of the case under the governing law or when sufficient
evidence exists such that a reasonable juror could return a verdict for the non-moving
party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In considering a
motion for summary judgment, the "evidence of the nonmovant is to be believed, and all
justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

The moving party has the initial burden of demonstrating that there is no genuine
issue of material fact to be decided with respect to any essential element of the

nonmoving party's claim. *Id.* at 250.  Once that burden is met, the nonmoving party must

set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986).  The nonmoving party's opposition may not rest upon

the mere allegations or denials of the pleadings, but must be supported by affidavits or

other competent evidence. *Id.*  By pointing to the absence of evidence proffered by the

nonmoving party, a moving party may succeed on summary judgment. *Id.* at 322-23.

## DISCUSSION

Defendants seek summary judgment on all claims that remain in plaintiff's

amended complaint.  For the reasons set forth below, defendants' motion for summary

judgment is granted.

### *1.  Plaintiff's Title VII Race and Sex Discrimination Claims Against the District*

Plaintiff contends that, based on plaintiff's race and sex, the District downgraded

her position as the Director of Court Liaison by two ranks and assigned a less-qualified

white male at a higher rank and pay grade in her stead, in violation of Title VII.  The

District counters that it had legitimate, non-discriminatory reasons for taking the

challenged actions, and the plaintiff has failed to rebut such reasons or produce any

evidence of racial or sexual discrimination on the District's part.  I agree.

Title VII makes it unlawful for an employer to "discriminate against any

individual with respect to his compensation, terms, condition, or privileges of

employment, because of such individual's race, color . . . sex, or national origin." 42

U.S.C. § 2000e-2(a)(1).  Until recently, under Title VII, in the absence of direct evidence

of discrimination, a plaintiff could indirectly prove discrimination under the burden-

shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).  However, our Circuit has since simplified the district court's inquiry.  *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).   Under the new approach, if an employee has suffered an adverse employment action and the employer asserts a legitimate, non-discriminatory reason for the action, at the summary judgment stage, the Court need only determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex or national origin[.]" *Id.* at 494; *see also Jones v. Bernanke*, 557 F.3d 670, 678-79 (D.C. Cir. 2009); *Piroty v. Chairman, Broad. Bd. of Governors*, 815 F. Supp. 2d 95, 98 (D.D.C. 2011).[1]

The District argues that the plaintiff did not suffer an adverse employment action under Title VII, and even if she did, the District had a legitimate, non-discriminatory reason for its challenged actions.  To be considered an "adverse employment action" under Title VII, a particular act must constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

---

[1] The evidence that plaintiff puts forth may include a combination of "evidence establishing the plaintiff's prima facie case", "evidence attack[ing] the employer's proffered explanation for its actions" and "any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006); *see also Washington v. Chao*, 577 F. Supp. 2d 27, 39 (D.D.C. 2008).

responsibilities, or a decision causing a significant change in benefits."[2]  Courts have held

that actions such as demotion, undesirable reassignment, or a reduction in salary or

benefits qualify as adverse employment actions due to their impact on the terms,

conditions or privileges of employment.[3]  The plaintiff has established that, in September

2007, the District downgraded her position as director of the Court Liaison Division from

the rank of Commander to Captain, a two-rank decrease coupled with a $20,000 per year

salary reduction that would impact plaintiff's retirement income, and appointed Westover

as the new director of the Court Liaison Division at a higher rank and pay grade upon her

departure. *See* Am. Compl. ¶¶ 11-12.; Pl.'s Opp'n to Defs.' Mot. for Summ. Judgment,

Ex. 1 at 59-60, 71, 82-83, ECF No. 53 (*hereinafter* "Pl.'s Opp'n"); Pl.'s Opp'n, Ex. 2 at

22-24, 32-33, 151-52; Pl.'s Opp'n, Ex. 12.  A proposed demotion coupled with a salary

decrease squarely fits within the confines of an adverse employment decision, *see Baloch*

*v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008), and the fact that plaintiff retired

---

[2] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Mack v. Strauss*, 134 F. Supp. 2d 103, 112 (D.D.C. 2001) (citing *Brown v. Brody*, 199 F.3d 446, 454-55 (D.C. Cir. 1999)) ("Title VII plaintiffs must demonstrate that an allegedly adverse personnel action had a tangible impact on the terms and conditions of a plaintiff's employment").

[3] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998); *Russell v. Principi*, 257 F.3d 815, 818-19 (D.C. Cir. 2001); *see also Brown v. Brody*, 199 F.3d 446, 455-56 (D.C. Cir. 1999) (differentiating between changes in assignments or work-related duties that are accompanied or unaccompanied by a salary decrease, with the former being included in the category of adverse employment decisions); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997)  (same); *Ohal v. Bd. of Trustees of Univ. of Dist. of Columbia*, 100 Fed. Appx. 833, 834 (D.C. Cir. 2004) (citing *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)) ("A materially adverse change might be indicated by . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits . . . or other indices that might be unique to a particular situation").

before the decision took effect is of no matter because the demotion was neither speculative nor hypothetical.[4]

Although the plaintiff suffered an adverse employment action when her position was demoted[5], the District has asserted a legitimate, non-discriminatory justification for the demotion. The record reflects that Chief Lanier instituted a complete reorganization of the MPD Command Staff during her first year in office because she believed that the command structure had become "too top heavy" and that it "needed to be downsized." *See* Mem. in Support of Defs.' Mot. for Summ. Judgment at 17-18, ECF No. 44 (*hereinafter* "Defs.' Mem."); Defs.' Mem., Ex. 2 at Interrogatory No. 5; Pl.'s Opp'n, Ex. 2 at 21-22. In pursuit of that goal, the evidence shows that Chief Lanier eliminated the Regional Operation Commands North, Central, East and Operational Support Command, reduced the number of Assistant Chiefs from eight to six, eliminated two Senior Executive Director positions that were the equivalent of Assistant Chiefs, and downgraded some positions, including the Court Liaison Director position, because "it

---

[4] *Compare Harris v. Wackenhut Servs., Inc.*, 590 F. Supp. 2d 54, 70-71 (D.D.C. 2008) (holding that a definite pending transfer could constitute an adverse action even though plaintiff never occupied the transfer position and resigned several days after being informed of the reassignment) *with Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 74-75 (D.D.C. 2002) (holding that a proposed scheduling change was not an adverse action because it was not effective immediately, it was never implemented, and the plaintiff continued to serve in normal role as shift supervisor).

[5] Because the Court agrees with the plaintiff, namely that she suffered an adverse employment action when her position was demoted by the District, the Court need not discuss plaintiff's arguments that premise the occurrence of an adverse employment action on constructive discharge. *See* Pl.'s Opp'n at 35-42. To the extent that the plaintiff's constructive discharge arguments are an attempt to add a substantive claim based thereon to the case, however, such an attempt must fail. *See* Am. Compl., ECF No. 6 (failing to include a constructive discharge count against either defendant).

was determined that the rank of Commander was not appropriate given the size of the

Court Liaison Division and the responsibilities thereunder." Defs.' Mem., Ex. 2 at

Interrogatory Nos. 5, 13; Pl.'s Opp'n, Ex. 2 at 14-22; Pl.'s Opp'n, Ex. 15 at 1.  By

comparison, plaintiff herself does not produce any evidence or explanation as to how race

or sex played a role in the alleged discrimination by the District other than bald assertions

that it did, and has done nothing to rebut the defendant's legitimate, non-discriminatory

justification for its disputed behavior.  As such, a reasonable jury could not find that the

District's reorganization-based explanation for demoting the plaintiff's position and

appointing Westover in her stead is pretextual and that race or gender was a determining

factor in the challenged employment decision.

For instance, the plaintiff takes issue with the fact that the District chose to demote

the plaintiff's position, instead of selecting her for one of the vacant Commander

positions, and offers this as evidence of pretext for racial or gender discrimination against

her.  *See* Pl.'s Opp'n at 22-23.  But the plaintiff's evidence counteracts her allegation that

the District discriminated against her on the basis of her race (African-American) or

gender (female), as three of the five employees who were placed in the vacant

Commander positions as part of the reorganization plan were African-American, and one

of the five was an African-American female.[6]  The plaintiff also argues that the District's

_____

[6] *See* Pl.'s Opp'n, Ex. 16 at Interrogatory Nos. 2, 3, 4; Pl.'s Opp'n, Ex. 17; *see also McNally v. Norton*, 498 F. Supp. 2d 167, 182 (D.D.C. 2007) (quoting *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)) ("[e]ven if a court believes that the employer used poor selection procedures, it may not second-guess an employer's personnel decision absent [a] demonstrably discriminatory motive") (internal quotations and citations omitted).

"sham offer of an Inspector position" to the plaintiff, which was apparently occupied at

the time it was offered, demonstrates an "attempt[ ] to hide discriminatory motives for

demoting [p]laintiff." *Id.* at 19-21.  But even if the offer of the Inspector assignment was

in fact illusory, it does not tie plaintiff's race or sex to the District's decisionmaking, nor

does it show that the District's reorganization plan was a pretext for discrimination.[7]

Because the plaintiff has produced no evidence of racial or sexual discrimination

on the part of the District beyond her own subjective opinion, there is no material dispute

on the issue of racial or gender discrimination and summary judgment on plaintiff's Title

VIII discrimination claims against the District is appropriate as a matter of law.

### 2.  *Plaintiff's DCHRA Race and Sex Discrimination Claims Against Chief Lanier*

The legal standard for discrimination under the DCHRA is substantively the same

as the standard under Title VII.  *See Gaujacq v. Electricite de France Int'l North*

*America, Inc.*, 572 F. Supp. 2d 79, 87 n.5 (D.D.C. 2008); *Vatel v. Alliance of Auto Mfrs.*,

627 F.3d 1245, 1246 (D.C. Cir. 2011).  Accordingly, defendants' motion with respect to

the plaintiff's DCHRA race and sex discrimination claims against Chief Lanier in her

---

[7] *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (noting that the "critical inquiry" is whether discrimination "was a factor in the employment decision *at the moment it was made*") (emphasis in original); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (explaining that the plaintiff at all times has the ultimate burden of persuading the factfinder that the defendant engaged in intentional discrimination).

individual capacity[8] are subject to the same analysis as plaintiff's Title VIII race and sex discrimination claims against the District.  *See supra*, 4-9.

For the same reasons that plaintiff cannot carry her burden with regard to her Title VIII race and sex discrimination claims against the District, plaintiff cannot carry her burden with regard to her DCHRA race and sex discrimination claims against Chief Lanier in her individual capacity.  The plaintiff's DCHRA race and gender discrimination claims against Chief Lanier thus fail as a matter of law.

### 3.  *Plaintiff's ADEA Age Discrimination Claim Against the District and DCHRA Age Discrimination Claim Against Chief Lanier*

Both the ADEA and the DCHRA make it unlawful for an employer to discriminate against an employee based on age.  *See* 29 U.S.C. § 623(a)(1); D.C. Code § 2-1402.11(a)(1).  Age discrimination claims under the ADEA and DCHRA are analyzed in the same way sex and gender discrimination claims are analyzed under the federal anti-discrimination laws.  *See Piroty,* 815 F. Supp. 2d at 98; *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 16, 26 n.22 (D.D.C. 2008).  Accordingly, if the defendant, at the summary judgment phase, asserts a legitimate, non-discriminatory reason for the challenged behavior, as the District and Chief Lanier have done here, *see supra,* 7-9, the Court must limit its inquiry to whether the plaintiff has presented sufficient evidence for a reasonable factfinder to conclude that the defendant's

---

[8] Plaintiff's official-capacity DCHRA claims against Chief Lanier have already been dismissed by this Court.  *See* Mem. Op. at 4-5, ECF No. 18 ("Plaintiff's remaining claim *against Chief Lanier is her individual-capacity DCHRA claim*").

rationale is not genuine and that age discrimination actually motivated the employer's decision. *Brady*, 520 F.3d at 494.

Unfortunately for the plaintiff, she has presented no evidence to cast doubt on the District or Chief Lanier's nondiscriminatory reasons for their decisions, merely conclusory allegations that the plaintiff was terminated by the defendants due to her age. *See* Defs.' Mem. at 13; Defs.' Mem., Ex. 4, Interrogatory No. 4.  Indeed, the plaintiff *effectively* concedes the defendants' arguments by failing to counter any of the defendants' assertions regarding age-based discrimination in its opposition.[9]  The Court would note, however, that no rational jury could find from the existing record that the District or Chief Lanier, in her individual capacity, demoted the plaintiff's position, and promoted Westover to plaintiff's former assignment at a higher rank, on the basis of plaintiff's age. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 186 (D.D.C. 2007) (unsupported allegations and self-serving, conclusory statements do not create genuine disputes).  And surely the three-year age gap between the plaintiff and Westover also

---

[9] *See Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule"); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("[i]t is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002); Local Rules of the U.S. Dist. Court for the Dist. of Columbia, LCvR 7(b) ("If . . . a[n] [opposing] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded").

precludes any accusation that age played a significant role in the defendants' decisionmaking.[10]

Accordingly, plaintiff's ADEA and DCHRA age discrimination claims against the District and Chief Lanier in her individual capacity respectively cannot survive summary judgment, and are dismissed as a matter of law.[11]

## CONCLUSION

Thus, for all of the foregoing reasons, defendants' motion for summary judgment is GRANTED.  An appropriate order shall accompany this memorandum opinion.

RICHARD J. LEON
United States District Judge

---

[10] *See* Pl.'s Opp'n, Ex. 16, Interrogatory Nos. 2, 4; Pl.'s Opp'n, Ex. 17; *McNally v. Norton*, 498 F. Supp. 2d 167, 181 n.14 (D.D.C. 2007) (an inference of age discrimination can only be drawn when a plaintiff is treated less favorably than a person who is younger by ten years or more).

[11] In June 2010, this Court dismissed the plaintiff's claims for punitive damages against both defendants. *See* Mem. Op. at 5, ECF No. 18.  Accordingly, no further ruling on punitive damages is necessary.